Clerk, please call the next case. 1093392, Village of Alsip Police Dept. v. McCaffrey. Good afternoon, Your Honors. Mike Russin on behalf of the Village of Alsip Council. This case involves an undisputed set of facts. The fact is that on January 4, 2006, the claimant was employed as a police officer for the Village of Alsip. On January 4, 2006, his job was to go to court. And he was scheduled to go to the Bridgeview Courthouse. And he was going to go to the Bridgeview Courthouse. He showed up at the police station at 9 a.m. He was supposed to be in court at 9 a.m. And he went to pick up some files that he needed for court. There is a long-standing quarter, a long-standing quarter, I believe the date dates back to 1991, which prohibits police officers from bringing their guns into court. The rule says you have to check your guns outside before you enter the courthouse. There's an obvious reason for this rule. And I'll discuss it more. You don't need to go into it because it's not – the reason for the rule is not particularly relevant to the case. But it's a rule. Right. And if you violate the rule, it's a criminal penalty. It is criminal to violate the court's rule. Contempt, you mean. Are you talking contempt to violate the court's order? Yes. Yes. The claimant decided not to follow the court's rule. The claimant decided to bring his gun into court. He didn't shoot himself in court. He shot himself in the police station, didn't he? He did. So? What does that have to do with court? Because he put the gun in his pants for the stated reason of avoiding the court's order. I don't care why he put the gun in his pants. The question is, at the time that he put his gun in the pants, his pants, was he authorized to carry a gun? Yes, he was. Was he authorized to carry a gun where he was carrying it? No. No? In the police station he couldn't have a gun? No, he could have a gun. Certainly. Where did he check his gun at the Bridgeview Courthouse? He would check – The police station? No, he would check it at the courthouse. So he would have the gun all the way from the police station to the courthouse? He would. And this time he chose to cover it in his pants. Now, we know he wasn't going to turn it into courthouse, but what was he doing with it in the police station? He was hiding it. From whom? From the clerk who went to get the file. Wait a minute. The clerk who went to get the file? He's in the police station. He's going to the recovery room. He's going to the evidence room to get a file to test the court. The man's a policeman. In fact, he probably has an order that he has to carry a gun, even when he's off duty. He's carrying a gun in the police station. He has not received it in the courthouse. And he shoots himself in the leg when he sticks it in his waistband because at some future time he's going to violate a court order and he's not going to let the clerks have his gun. Not at a future time. At that moment. At that moment. He is going to immediately leave the room. Wait a minute. Is the Elsa Police Department and the Bridgeview Courthouse the same building? It is not. Well, didn't he have to go from the police station to the courthouse? He did. Okay. So at that moment, he was entitled to carry a gun. It wasn't until he got to the courthouse that he wasn't supposed to be carrying one, is there? You know, that would be a valid argument if his stated purpose for putting the gun in his pants was for anything other than violating the court order. Why? Why would that be so if he's entitled to carry the gun? The police department does have a set of rules with respect to carrying the guns. And all the rules say you keep it in a holster. There's no rule that says, in fact, the rules are there to avoid this type of thing. Do you mean if a policeman violates the Elsa rules if he doesn't keep his gun in a holster? Yes. It is a violation of the rules. There's a rule that says that? Yes. Except when he's not on duty? Yes. It's part of the record as to – Why don't we assume this for the sake of the argument? Your argument, I understand, that he is at least in the process of, or he is at the time he's in the Elsa police department, of violating a rule, a policy, because he's going to be – his intent clearly is to go to the courthouse in Ridgeview with a weapon he's not supposed to bring. Let's assume for the sake of the argument you are 100 percent correct. Yes. Would you also agree there is a line of cases that says that is not the end of the issue clearly? There are cases that have held that even if the employee, without doubt, without legal dispute, is violating a work rule, that does not necessarily end the issue. The issue legally is one, while the person is violating the rule, quote, unquote, are they still, quote, unquote, in the scope of their employment? There's another mechanism or another part of the equation, is there not? Absolutely. Okay. Yes. And you cited in the briefs you were talking about the Saunders case, some other cases. I think, cut to the chase, Saunders and the other cases are clearly distinguishable, because here is the hurdle that I think Justice Hoffman was bringing you to get over. At the time that the gun went off, even if the officer is violating a rule, he is still performing – he's in the police department for the purpose of retrieving a file to make a court appearance. So, in other words, at the time of his injury, he was still performing the duties for which he was hired. He wasn't doing anything in the police department that he was not going to do, whether he had a gun or not. Okay? Whether he has a gun, he still had to go there and get a file. He was in the course of his employment in the scope of his employment. He's violating a rule. That didn't take him out of the course of his employment, did it? Yes, it did. How did it do that? The reason he takes the gun out of his holster has nothing to do with his employment. There is no – But you just answered my question. It has nothing to do with his employment. He has to go – if he had to do – appear in a bridgeview court, wouldn't he have had to go on to the also police department and do exactly the same thing with or without a gun? I'm – let me just frame your question. He had to go to the also police department. And get a file, correct? Yes, correct. If he didn't have a gun at all, he would have been doing the same thing, correct? Would have been injured. You're absolutely right. He would not have been injured. So the fact that he had a gun didn't take him out of the scope of his employment because you just admitted he was doing exactly what he would have had to do if he had a gun or not. But the same could be said in the Saunders case. The man was at his employment. He was doing everything associated with his employment. He was going to lunch. He was in the course of his employment. Here's the difference. When he violated the safety rule, the guy in Saunders was retrieving his lunch. That's not a part of his work responsibilities. It's part of it. Here he was doing his job by getting a file. He wasn't getting his lunch when the gun went off, was he? Or at a vending machine? No. See the subtle distinction? It's – you know, I guess in my view it is not a subtle distinction. It's a significant distinction. The distinction that I see is a distinction between a case where someone is doing something in furtherance of his employment. Well, obviously this guy was because he had to get a file. He wasn't injured getting a file. He didn't slip on the floor. He didn't get a paper cut. Let me ask you a question. He admitted that he was putting the gun in his waistband because he did not intend to follow the court order. Correct. He never testified why he did not intend to follow the court order. True? In other words, he didn't say, I don't like that order. I don't think police officers should have to give up their guns. He wasn't asked, and he never testified. He did not. All right. He was running late, right? Yes. How do we know he didn't put it in his waistband because he was running late and he wanted to get to the courthouse faster to testify and do his job? You know, he could have testified to that. If, in fact, that was true, that would fall right along the lines of the Lumagi case cited in Saunders of the minor who decided he wasn't going to walk. He was going to attempt to use some sort of motor to get from one point of the mind to another point in the mind faster. And the court said, you know, you can't do that. If you're prohibited from doing it and if you engage in an action for your own personal benefit, and that's the difference that I see here. Why would it be his personal benefit if he's trying to get there on time to do his job? Well, he didn't say that he was late and he was doing it to be quick. He said he had to testify at 9 o'clock at the courthouse, and this happened at 9 o'clock and he was still at the police station. That's true. So can't the commission infer that he was in a hurry? They could, but they didn't. I mean, it's possible to. What rule did he violate? I'm sorry? What rule did he violate? He violated the rule of taking his gun out of his holster. Wait a minute. Hold on a second here. Are you saying members shall only draw or display their firearms in times of demonstrated need or for an official inspection, not use or handle the weapons in a careless or imprudent manner? Yes, sir. How does he get the gun out of his holster when he takes it home to put it in the safe? Does he call the chief over there to do it for him? No, sir. He gets the gun out of his holster, doesn't he? Yes, sir. Okay. Now, he can carry a concealed weapon, can't he? He can. Okay. So now he's stuffing it in his pants. Now, you suggest that he negligently stuffed it in his pants. He negligently stuffed it in his pants. Is that what he did? No, he intentionally stuffed it in his pants. He didn't have an alternate holster to put it in. This wasn't by accident. Let me ask you a question. Yes, sir. If I'm a truck driver and my company has a rule against violating any city ordinances when I'm driving their truck, and the speed limit is 40 miles an hour on Higgins Road, and I decide intentionally to do 45 miles an hour and get in an accident under your thesis, I have violated a rule and, therefore, I am not covered by the workers' compensation. Is that correct? That is not correct. And the McKernan case absolutely says that. What's the difference? The McKernan says you're correct. The McKernan says, absolutely, someone who's speeding is engaging in negligent conduct. But I intentionally drove five miles over the limit. Yes. I intentionally did that. And you're doing that for the benefit of your employer. Yes. You're trying to get from point A to point B quickly. Who was he going to court for, his grandmother? He was going for his employer. That's true. Absolutely. Well, I mean, Mr. Russell, I've got to be honest with you. I read this brief, and I don't even understand what argument you have. Well, I'm not really arguing that the violation of the police rules is what takes him outside the scope of his employment. Then what does? The violation of the court order. He never entered the courthouse with a gun. There's no nexus between the court order and the place where this thing happened. Well, absolutely, because the only reason he took the gun out of his holster was to violate the court order. And there's no way to infer any other reason. It's incidental. He took the gun out. He was there doing what he was supposed to do. I go back to my original argument. He was going to retrieve the file at the police department. And absolutely. Taking the gun out had nothing to do with taking him out of the scope of his employment. Let me read you a quote from Saunders that you keep hanging your head at. The court says, and I quote, By riding double on a forklift, Saunders engaged in a hazardous method of travel. And this is the key part. The sole purpose, quote, unquote, was his personal convenience. Saunders involved getting lunch. Under anyone's definition, that's got nothing to do with your job assignment. You're getting lunch. When he's in the police department retrieving a file, that is absolutely what he is required to do by his job. How he does it, violating a rule, what he's doing there has nothing to do with the fact that he's doing his job the same as every other officer when he gets the file, with or without a weapon. You think that the violation automatically takes him out of his employment, and that's the flaw in your reasoning. Because you've got to look at what he's doing at the police department, not pulling the gun out. It's not two separate incidents here, okay? I certainly agree. And I would ask you simply to finish the quote that you're looking at. And from my perspective, what the court said in Saunders is the commission in this case reached the same conclusion that the court reached in Lamaggi, that the employee's conscious violation of a safety rule was purely for his own personal convenience, in no way required or benefited by his employer, and therefore did not arise out of his employment. Well, is getting lunch something that benefits? You just answered your own question. Is getting lunch something that benefits the employer? Actually, it is. I mean, the way the court interprets in the course of, if you're on your employer's premises and it's lunchtime and you're getting lunch, that's something for the benefit of your employer. Saunders specifically says, you know, this is a quote from the case, Saunders' job description did not include hitching a ride to the break room on a passing forklift. So, I mean, they specifically found that he was not engaged in his job duties at the time. Well, then what I think you need to do as a court then is determine that taking your gun out of your holster and sticking it in your pants for the sole stated reason of bringing the gun into the courthouse in violation of the court order was not something for his personal convenience, and that bringing the gun into the courthouse was for the benefit of his employer. Well, if he shot himself in the courthouse, that would be a little bit different story. Yeah, but he wouldn't have gotten that far. What do you mean he wouldn't have gotten that far? Well, because he wouldn't have had the gun if he was in the courthouse. Well, if he was in the courthouse and he shot himself, he may have an argument. But how do you distinguish this from J.S. Masonry? Man, I've got a couple of bars to remember what J.S. Masonry is. I think your time is up, counsel. You'll have time to rebuttal. Thank you, Your Honor. Counsel, please. May it please the members of the court, counsel, my name is Sam Cuba. I represent John McHale. I think that counsel has argued very well for his client as much as he can. On behalf of my client, I would like to point out that there is a written rule in LSIP about holsters and their witness admitted under cross-examination it does not prohibit taking out of the holster. I can't hear you. It does not prohibit taking the gun out of the holster. The written rule does not say you cannot take the gun out of the holster. What was the rule? We've gone all over this territory in different ways. What was the rule he violated? What was he really charged with? The only thing that he can be said to have violated was he was going to put the gun in his waistband so then he could apparently sneak it in the bridge. Hold on, hold on. Can I just stop? He can't do that. He can't make that connection. No, please don't. Right. The rule, he was careless in his handling of the firearm was what he was charged with. Am I correct? He had a disciplinary hearing if it was referred. But in the disciplinary hearing, it went to the rule. Right. Just the else, nothing to do with it. That's all I want to talk about. Right. That is employment, place of employment. Right. And he violated a safety rule which a safety rule says you have to handle your firearm in a safe manner. And arguably what he did was he took and he mishandled his firearm. What he simply did was he put his in the waistband with his finger on the trigger. Or it might have caught in the way. We don't know. Well. Whatever. The allegation is negligence in putting the gun in the pant band. Correct. So listen, all this holster stuff and all of this stuff seems to me to be a rabbit down a hole. Red hair. Yes. Okay. I will agree. When you look at a railroad yard, there's a rule that you can't walk in a puddle. If you've ever seen a railroad yard after a rainstorm, nobody could work. So safety rules. We've got a policeman that doesn't even know the value of a weapon. Well, Your Honor, guns do misfire. They are dangerous instrumentalities. I suppose they're taught that, aren't they? I'm sorry? I suppose the police officers are taught that, aren't they? I believe every new recruit has to be taught how to use a gun. Are they taught to put a gun in their pants? As a matter of fact, Your Honor, they are required to conceal them sometimes. And the rule does not say that you can't put it in the pant. Indeed, it says you have to conceal it. You have to carry a concealed weapon. So you have to do that sometimes. It's a dangerous thing. It's the equivalent of if I was working with a power saw. I know that that's a dangerous instrumentality. But if I'm cutting wood with a power saw and something distracts me while I'm working and I look at something going by and I accidentally cut off a finger, I am not saying that I am not negligent, but I believe counsel's argument would amount to making contributory negligence a defense in a workers' compensation case. The analysis here has to be, does this arise out of and in the course of the employment? And if, in fact, it does, that's what the statute requires, then we have a compensable case. And it was 9 o'clock he was supposed to be in court. You can take judicial notice that the courthouse is about 7 miles away. He's supposed to be in court at 9 o'clock, and he's at the Elson Police Station at 9 o'clock. He has to get the files there. There's a chain of evidence rules for police officers. They can't just take things willy-nilly home and bring them a week later to court. They're kept in a custodian's office, and they're a very specific purpose. And he's going there to do what he has to do to get the file to go to court to testify. He's a police officer. He has to. And if you're too late. So there's some reason he was late? That's what the record says. That's his testimony and their witness' testimony. He was there at 9. He had to be in court at 9. There's a 7-mile gap between the courthouse and the police station. The subcircuits in Cook County serve various municipalities. The Bridgeview Courthouse is in Bridgeview, and the Elson Police Station is in Elson. Those suburbs are not even, they don't even touch each other. They don't involve the same building. So if we took counsel's argument at its face, it would be turning contributory negligence into a defense to workers' count. And we all know that was the tradeoff when they wrote the act. You can't do that. Again, in a railroad yard, if you can't walk in a puddle, nobody can work on a rainy day in a railroad yard. When you have a saw, nobody should be cutting their finger off on purpose, but it's not inconceivable. Somebody can't turn their head a little bit, and an accident happens. If this was a negligence case in circuit court against a sawmaker or against a gunmaker for having a dangerous gun, they're all dangerous. You're supposed to use due care, but that becomes negligence. You cannot impose a negligence standard. The law says, does it arise out of it? And, of course, it's the other one. I think I've met that burden specifically. Thank you very much. Mr. Reynolds, please. Counsel, let me ask this one question that may be relevant here. At the time the officer shot himself, was he at the police department for a work-related purpose? Yes, he was. Okay. And so why isn't it compensable? It goes back to the issue that I think is the distinction maybe I'm failing to make, and that's the distinction of while you're at work, and Saunders talks about this, and Republic, Iron, and Ramaji all talk about it, you know, everything that happens at work is incompensable. If you engage in an action which increases your risk, where you voluntarily increase your own risk of injury, and you do it for purely your own benefit, not for a manner that benefits your employer. Orsini is an excellent example. Somebody's at work and they're, you know, cooking their lunch in a stove or they're doing something for their own personal benefit. Can I stop you there? Sure. Why are you talking about personal benefit? If you're not doing it for the benefit of the employer, we don't need to know what the benefit is or isn't. If you're not doing it for the benefit of the employer, which you should be focusing on, arguing that, of what benefit was it to the employer what he did, violating a safety rule that you say took him out of the sphere of his employment and therefore it's not compensable? And I guess your question is, is there some benefit to the employer in the activity he engaged in which caused his injury? No, that's not really the issue. The issue is, as you're saying, was the act he was engaging in, not whether it was beneficial to the employer. None of these things are. Violating rules could never be for the benefit of the employer. The question is, does the violation take them out of the scope of employment? Let me give you an example of why your reasoning is flawed. According to your argument is, if somebody's on a job site operating heavy equipment and they're listening to music and they've got a radio going and some crane falls over on top of them, they shouldn't be compensated because the radio is not for the benefit of the employer, is it? It takes them out of the scope of employment. That's what you're going to argue? When the crane falls on the guy? No. Okay. What's the difference? The difference is, at the time of the event, was the individual engaged in an activity for the benefit of the employer? Yes. He was there retrieving a file, and that's for the benefit of the employer. But that puts us in a positional risk compensation state, and we're not there. You've got to show that the act, which caused... He doesn't do a positional risk. He's there doing an activity for the benefit of the employer when he violates the rule. Now, you would have a legitimate argument if he's there dropping by after work just to pay a friend a visit, and then he pulls the gun out because he's not there for a work-related purpose. He wouldn't be in the course of his employment. It's not in the course of. Everybody who's at work, during work hours, shortly before or after, they're in the course of. This is purely in a rising out of argument. But violating the rule, if you check the cases, in and of itself does not take somebody out of the scope of their employment. And I agree. But under your reasoning, then Saunders is compensable. No, because getting lunch is a personal. You're not there for a work-related purpose when you're getting your lunch. When you're retrieving a file, what you're doing while the file's being retrieved is irrelevant. Okay? You're still there for a work-related purpose. You are. But then every case involving a violation of a work rule would be compensable. Lumagi would be compensable. As long as it doesn't take you out of the scope of your employment. Yeah. But then Lumagi has to be compensable because he was trying to get from one spot in the mine to another spot in the mine. And you've got to overrule Lumagi. I mean, you can't overrule Lumagi, but you've got to ignore it, and you've got to ignore Saunders. And Saunders was a tough case. I mean, it was they went back and forth the whole time going up, and it was a four-to-three decision from the Supreme Court. So I'm not saying this is an easy case. And all I'm saying is from my perspective, the only reason while standing waiting for his file that he took the gun out was for his own personal convenience, and he stuck it in his waistband for the sole stated purpose of avoiding the court's order that he had to check it without taking it into court.  I'm saying that he took the gun out for a work-related purpose when he took the gun out. Yes. And that you cannot dispute. I'm not trying to. You concede he was in the course of the employment. Absolutely. You're just saying. It's not in the course of this. Did it arise out of because the rise out of can be affected by a violation of a safety rule. You have to do more than violate a safety rule. If I was standing here saying he violated a safety rule, therefore the case shouldn't be compensable, I wouldn't be standing here. That's not the law, because you know it isn't. It's not. And I wouldn't be standing here but for the fact that there's a court order in Bridgeview, and the only reason he took it out of his holster was to violate that court order. And that's an undisputed fact that he admitted. Thank you. I appreciate your time. Thank you, counsel. The court will take the matter under advisement for disposition.